(C.D. 3779)

## V. G. NAHRGANG CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 15, 1969)

*John C. Ray* for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: The merchandise involved in these consolidated protests consist of certain chemicals, identified as Tufftride Salt No. 1 and Tufftride Salt No. 2, which were classified under the provisions of paragraph 5 of the Tariff Act of 1930, as modified, at the rate of 10½ per centum ad valorem as "other" chemical compounds and mixtures, not specially provided for.

Plaintiff claims the merchandise properly free of duty under the provisions of paragraph 1667 of the Tariff Act of 1930, as cyanide mixtures and salts. Plaintiff herein is importer of record for Kolene Corporation, Detroit, Michigan, actual importer of the involved merchandise.

At the trial, plaintiff abandoned its protest claims insofar as they were directed to the merchandise identified as Tufftride Salt No. 1

(R. 2). Plaintiff, through its counsel, also moved and there were received in evidence, the official papers and the United States Customs Laboratory Reports contained therein, conceding "the accuracy of the analysis" revealed by said report (R. 3). The Government chemist's findings in said report revealed that the imported Tufftride No. 2 contained 97 percent potassium cyanide and sodium cyanide and 3 percent cyanates or soduim cyanate (R. 10–11).

Two witnesses testified for the plaintiff. Defendant, on its part, did not call any witnesses at the trial. Dr. John J. Mueller, Frankfort, Germany, stated that he holds a degree in chemistry and a doctorate in metallurgy (R. 7). He testified that he was employed by the firm Degussa, exporter of the involved merchandise, as technical director of the department "which is engaged in the field of treating metals in salt bars" (R. 6–7). The witness further testified that he developed the so-called "Tufftride" process and was familiar with Tufftride No. 2 and with the method of manufacture of this product which is used for "replenishing the Tufftride salt baths" to treat metals in order "to increase wear resistance and increase wear strength" (R. 8). In describing the manner in which Tufftride No. 2 is produced, Dr. Mueller stated:

> This, it is mixture of sodium cyanide and potassium cyanide. It is made by making first the sodium cyanide by the so-called Castner process and then the potassium cyanide, it is mixed to the sodium cyanide in solid form, it is melted down into the sodium cyanide. Then we cast in molds out of this mixture of sodium and potassium cyanide [R. 9].

The merchandise is exported to this country in egg form, in solid shape, being about "2 inches long, as small as chicken eggs." Dr. Mueller testified that the 3 percent sodium cyanate content so found by the Government chemist in Tufftride No. 2, was not an additive, that is, something which is added to the product, and that it does not serve any useful purpose in the importation in question. He further stated that "we tried to replenish the cyanide so to positively have 100 percent product. It is a disadvantage to have, for example, cyanate in it" (R. 11). In this connection, plaintiff's witness stated that the importer of this merchandise did not request the addition of any cyanate in this product. The witness stated that the presence of such a small amount of cyanate in the imported product is inevitable due to the manufacturing process employed in its production; that "* * * We have to melt together this sodium cyanide and potassium cyanide * * *. We have contact with the atmosphere, with air, so cyanate will be formed by oxidizing on the surface of the melt" (R. 12). Dr. Mueller further testified that it would not be feasible to completely eliminate cyanate out of Tufftride No. 2. He stated that, based upon his knowledge of

chemistry and metallurgy and his experience with the imported product, Tufftride No. 2 was not a cyanate mixture, explaining in this connection, as follows:

> A. I understand a mixture is something where I put together two or more compounds. In the case of Tufftride No. 2, I put sodium cyanide and potassium cyanide but no cyanate, so it is not a cyanate mixture [R. 13].

Plaintiff's witness defined a mixture "where I mix together compounds, for example, cyanides with cyanate, where I put cyanate to other compounds" (R. 14). He stated that he also ships to the present importer Tufftride No. 1 which "is a cyanate mixture because there we have about 40 per cent cyanate and 60 per cent cyanide" but that, in his opinion Tufftride No. 2 here in question is "a mixture of sodium and potassium cyanide. * * * It is a cyanide mixture" (R. 14–15).

On cross-examination, Dr. Mueller agreed that Tufftride No. 2 does contain a certain percentage of cyanate. He testified that the du Pont company does not produce a product like Tufftride No. 2 with a maximum of 1 percent of cyanate; but that du Pont does produce a sodium cyanide which has a cyanate content of 1 percent or less, but so does his company produce such product (R. 15–16). The witness further testified that the efficient processing of Tufftride No. 2 might bring down the percentage of cyanates to a "minimum" but that "it is always possible" that the cyanate content will come out 3 percent or more (R. 16).

Plaintiff's second witness, William G. Wood, stated that he was a chemical and metallurgical consultant for 5 or 6 years and prior to that was vice president of research and manufacturing for Park Chemical Company, Detroit. The record discloses that he holds a bachelor of science degree in chemical engineering, a bachelor of science degree in chemistry and a master of science degree in metallurgical engineering. He was also a member of a number of societies and institutes for engineers.

Mr. Wood testified that he was familiar with Tufftride No. 2 since its introduction into the United States through servicing customers of Kolene Corp. He stated that Tufftride No. 2 is an additive or actually the base salt for the Tufftriding processing performed in a "bath" which is "composed of approximately 50 per cent cyanide and this sodium and potassium cyanide and approximately 50 per cent cyanate." This is an aerated bath and the replenishment of the bath is with cyanide and the aeration converts the cyanides to cyanates and cyanate is the active product which in contact with the ferris or steel surface promotes a nitrate case and a nitrogen diffusion into the interjected materials, "say 40 or 50 thousandths which produces both a

wear resistant and fatigue resistant in various automotive components" (R. 22–23). The witness stated that he had visited approximately 30 or 40 plants having such baths.

Mr. Wood further testified that he would not dispute the finding of the Government chemists in the analysis that "Tufftride No. 2" contained about 97 percent of the potassium and sodium cyanide and about 3 percent of sodium cyanate. He then stated that he would be surprised if the product contained no sodium cyanate, explaining in this connection as follows:

> A. Because of the method of manufacture which has previously been described, but the fact that the Tufftride is produced in a fused egg, it means that it is poured from molten cyanide. This is common in the industry when cyanide, when it is exposed to the air, you just get a natural oxidation and develop the cyanate. How much you get is probably dependent upon how much air has access to the cyanide, how it is formed, anything like this would influence it [R. 24].

Plaintiff's witness further stated that potassium cyanide or sodium cyanide also comes in a flour or flake form and that the cyanate content of the potassium cyanide or sodium cyanide in such forms was "in the range of 1 per cent". The flake form is poured at a higher temperature than the egg form of Tufftride No. 2 and a lesser amount of cyanate results from such higher temperature. A temperature of 1,200 degrees Fahrenheit is used in making Tufftride No. 2 whereas 1,500 or 1,600 degrees are used in making the flake or powder form (R. 24–25).

Mr. Wood further testified that the 3 percent cyanate in the Tufftride No. 2 is a very undesirable component and that it is not economically feasible to obtain a 100 percent cyanide and he agreed with plaintiff's witness Mueller that the 3 percent cyanate content of Tufftride No. 2 was "an unavoidable factor arising out of its manufacture." Mr. Wood gave it as his opinion that Tufftride No. 2 was a cyanide mixture with impurities present, that is, a mixture of sodium and potassium cyanide, and that it was not a cyanate, stating in this connection that a cyanate mixture would be a mixture where cyanates were deliberately added as in the case of Tufftride No. 1 where cyanate is added in its manufacture (R. 27–28).

The specific issue, in the case at bar, is whether the involved merchandise, Tufftride No. 2, is properly free of duty under Paragraph 1667 of the Tariff Act of 1930. The defendant maintains that the "exclusionary" provision in said paragraph 1667 covering cyanide mixtures "not including cyanates", precludes classification of the involved merchandise under the claimed paragraph. In our opinion, however, the presence of such a small amount of cyanate in the involved importation, as indicated by the record in this case, does not prevent its classification under the provision of paragraph 1667 for "cyanide mixtures".

In the case at bar, plaintiff's witnesses testified without contradiction that a 100 percent pure product would be desirable, but that it was economically impossible; that even sodium or potassium cyanide products could not be made 100 percent pure and had traces of cyanate in them. Further, it appears that there was no deliberate mixture of the cyanate content to the importation at bar but that the cyanate in the product was a result of the manufacturing process employed in its production. The testimony of plaintiff's witness, Dr. Mueller, that a cyanate mixture product would be one where cyanides and cyanates are mixed or where cyanates are added to other products (R. 13–14), was not contradicted by other testimony or evidence in the record. It appears, therefore, that the presence of the cyanate content in the importation in question was not an additive which would render it a cyanide mixture "including" cyanates, so as to disqualify the importation under the claimed paragraph of the tariff act. The record further discloses that the cyanate content did not add to the value of the product, but, on the contrary, the cyanate contained in the importation was undesirable inasmuch as its presence complicated the metal treating process in which the product in question was employed (R. 11, 12, 26, 27). The above factors, in our opinion, support the conclusion of plaintiff's witness that Tufftride No. 2 was "a cyanide mixture" (R. 14, 15).

Plaintiff herein, in support of its claim, directs our attention to the case of *Williams, Davis et al.* v. *United States*, 26 Treas. Dec. 888, T.D. 34495. It was there held that an article containing 22 percent of cyanide of potassium, 57 percent of cyanide of sodium, and 21 percent of other substances was commercial "cyanide of potassium", as claimed. While it is true, as pointed out by the defendant, that paragraph 64 of the Tariff Act of 1909 there involved did not contain the exclusionary provision "not containing cyanates * * *", as appears in the present paragraph 1667, yet, the situation in this case respecting the slight amount of cyanate contained in the imported product, as heretofore outlined, supports, in our opinion, a conclusion that the Tufftride No. 2 in question is properly classifiable as a cyanide mixture.

On the basis of the record here presented, we hold that the Tufftride No. 2 here involved, is properly free of duty under paragraph 1667 of the Tariff Act of 1930 as a "cyanide mixture", as claimed.

The protests are sustained.

Judgment will issue accordingly.